6491. KING *v.* CITY OF HAZLEHURST.

Where the only complaint made in a petition for certiorari to review the judgment of the mayor of a municipality is based on the insufficiency of the evidence, and the judge of the superior court has approved his finding, and there is some evidence upon which the finding may rest, this court can not disturb the judgment.

DECIDED MAY 10, 1915.

Certiorari; from Jeff Davis superior court—Judge Highsmith. March 5, 1915.

*P. L. Smith,* for plaintiff in error.

*Bennett & Swain,* contra.

WADE, J.  The defendant was charged with the violation of a
municipal ordinance prohibiting the keeping on hand of intoxicat-
ing liquors for sale.  He entered a plea of not guilty, but in open
court admitted that at the time charged "he did receive from R. T.
Williams the sum of $1.50, and later delivered to said R. T. Will-
iams one quart of whisky therefor, thereby admitting a prima facie
case and assuming the burden of proof."  The evidence of Williams
showed that he gave the defendant $1.50, and sent him after a
bottle of whisky for a friend, and that the defendant thereafter
brought a quart of liquor in its original package, wrapped and
sealed up, to his office and delivered it to him, and he thereupon
turned it over to his friend.  The defendant, in his statement at
the trial, asserted that he purchased the quart of whisky as the
agent of Williams, from one Will Nicey, paying for it to Nicey
the identical dollar bill and fifty-cents piece that he had received
from Williams for that purpose; that he had no interest in the
whisky or in the money, and did not even see the whisky, but sup-
posed the package contained whisky, as he was acting solely for the
accommodation of Williams.  Jackson, a witness for the defendant,
testified that he was at the home of Will Nicey when the defendant
came to Nicey's house and told Nicey that "some one had sent him
to him for a package of whisky;" that "Will Nicey reached down in
a suit-case, which was right by him, and handed Mr. King [the
defendant] out a package which looked like a quart wrapped up.
Mr. King took it and went away."  Nicey's wife testified to about
the same state of facts, saying that King came into the house,
"spoke," and told her husband, Will Nicey, that "some one had
sent him after a package," and "Will Nicey said all right, reached
down into his suit-case, took out a quart of whisky, handed it to
him, and Mr. King took it and went out with it.  .  .  It was my
husband's suit-case and whisky.  He brought it there.  .  .  I
did not notice whether Mr. King paid him for the quart of whisky
or not; I do not remember seeing him pay for it, but I know he got
the liquor from him, for I saw him get it out of the suit-case, and
hand it to Mr. King.  There was about 5 or 6 more quarts left in
the suit-case then."  One Tapley testified that he was present when
the defendant came to Nicey's house, and "told Will Nicey that
some one had sent him after a package.  Will Nicey said, 'All
right,' reached down and got a quart, or what looked like a quart

wrapped up, out of a suit-case, the one he brought with him there, and handed it to the defendant. The defendant took it and went away, and I did not see anything more of him that night." The mayor, passing upon the evidence, found the defendant guilty, and the defendant sought to review this judgment by certiorari. The judge of the superior court overruled the certiorari and affirmed the judgment of the mayor.

The only error alleged in the petition for certiorari is that the evidence did not sustain the conviction. It was contended that the evidence as a whole clearly showed that the accused was acting as agent for the buyer, and not for the seller, and that therefore the liquor in his possession at the time he delivered it to the witness Williams was not stored or kept by him for the purpose of illegal sale. As appears from the record, a prima facie case was admitted by the defendant, and therefore the burden rested upon him to satisfactorily explain his possession of the liquor, and his acceptance of the price therefor from Williams. This burden he endeavored to carry by the evidence of several witnesses, who testified that they saw him obtain the whisky from one Will Nicey on request, but there was no testimony from any of them showing a purchase of whisky by him, or at least the evidence does not disclose that he either paid or promised to pay Nicey anything whatever for the whisky, which he obtained apparently on demand only. The defendant himself said that he paid to Nicey the money received by him from Williams for the purpose of purchasing one quart of whisky, but the mayor did not credit this statement or accept it as affirmative proof of a purchase by the defendant from Nicey; and, though authorized to believe it even in preference to the sworn evidence he had the right to reject it entirely, and when he did so there was nothing before the court to establish any purchase from Nicey by the defendant. Of course, it is well settled, by repeated adjudications by the Supreme Court and of this court, that where one receives money and delivers whisky therefor, he may be treated as the seller, if the evidence in the case does not point out another as the seller, and it is not shown where, how, or from whom the whisky was obtained. *Paschal* v. *State,* 84 *Ga.* 326 (10 S. E. 821); *White* v. *State,* 93 *Ga.* 47 (3), 51 (19 S. E. 49), and many other cases. The evidence in this case did disclose where and from whom the whisky was obtained, but it did not disclose *how* it was ob-

tained, nor did it establish (leaving out of consideration the defendant's statement) the fact that the seller was some person other than the accused. The testimony did not disclose that the accused paid Nicey, or that it was understood between them that he was to pay one cent for the whisky, obtained on simple request or demand; so it fails to disclose "how" the whisky was obtained—whether from his own store of intoxicants which Nicey temporarily had in charge, or whether from his partner in crime, equally interested with him in the profits of the illicit sale, or whether from his agent or employee.

In the absence of any testimony establishing the fact that the accused delivered money or some other thing of value to Nicey in return for the whisky, there was nothing to establish his contention that Nicey, and not himself, was the actual seller. The court was, therefore, authorized to find that the whisky delivered to Williams by the defendant (leaving out of consideration the defendant's statement) was so delivered for the sum of $1.50 received by him from Williams; and since it has been settled, by repeated adjudications, that proof of one illegal sale of whisky is sufficient evidence to establish that at least the whisky sold was kept for the purpose of illegal sale, the conviction of the accused, under the municipal ordinance prohibiting the keeping of liquor for illegal sale, was authorized. Under the evidence the court may have inferred that complicity between the accused and Nicey as to the alleged crime had been shown. If the evidence had established that the accused delivered to Nicey the exact sum received by him from Williams, the conviction would not have been authorized, but the witnesses introduced by the defendant himself all asserted distinctly that they saw and heard the entire transaction between the accused and Nicey, and each contradicted in effect the statement of the accused as to a consideration passing from him to Nicey, or, in other words, failed to confirm his assertion that he paid Nicey the $1.50 which he himself said he had received from Williams.

It is well settled, under repeated rulings of the Supreme Court and of this court, that where one receives money from another for the purpose of obtaining whisky, and shortly thereafter delivers the whisky to him, the onus is on the person receiving the money and delivering the whisky to explain how, where, and from whom he got the liquor; and if the only explanation offered is in his own

statement, the jury may find him guilty; but if his statement is corroborated by an unimpeached witness, who testifies that he did in fact buy the whisky from another person *and pay him for it,* then this burden would be successfully carried and the jury should acquit the accused. In this case, as already pointed out, the accused was not corroborated by testimony of any one unimpeached witness to the effect that he had purchased the whisky from Nicey and *paid* the latter therefor. In *Gaskins* v. *State,* 127 *Ga.* 51 (55 S. E. 1045), the Supreme Court, said: "When a defendant is on trial charged with illegally selling intoxicating liquor, and the evidence shows that he received money from another person, accompanied with a request to procure for the latter some intoxicating drink, and shortly thereafter returned and delivered the article as requested, the burden is on the accused to explain how, where, and from whom he obtained the liquor; and until some other person filling the character of seller in the transaction is shown to the satisfaction of the jury, they would be authorized to treat the defense that the accused acted as the agent of the buyer as a mere subterfuge to cover up an illegal sale by himself, and to find him guilty of selling the liquor." In *Mack* v. *State,* 116 *Ga.* 546 (42 S. E. 776), it was held: "On the trial of one charged with having violated the law by illegally selling intoxicating liquor, proof that the accused received money from another person, accompanied with a request to procure whisky for the latter, and shortly thereafter delivered whisky to such person, puts the onus on the defendant of explaining where, how, and from whom he got the liquor (*Grant* v. *State,* 87 *Ga.* 265 [13 S. E. 554]) ; and if the explanation offered by him is supported only by his own statement, the jury, if they believe it to be a mere subterfuge to cover an illegal sale by himself, are authorized to find him guilty. *White* v. *State,* 93 *Ga.* 47." In *Highsmith* v. *Waycross,* 7 *Ga. App.* 611 (67 S. E. 677), this court said that if the explanation offered by the accused, under circumstances like those in the present record, "is supported only by his own statement, the jury, if they believe it to be a mere subterfuge to cover up an illegal sale by himself, are authorized to find him guilty." The point appears to have been precisely and in so many words passed upon in the case of *Bray* v. *Commerce,* 5 *Ga. App.* 605 (63 S. E. 596), in which this court said: "On the trial of one charged with a violation of a city ordinance, in having

on hand intoxicating liquors for the purpose of illegal sale, proof' that the accused received money from another person, accompanied by a request to procure whisky for the latter, and thereafter went off, and in a short time returned and delivered a bottle of whisky to that person, would cast on the accused the onus of showing where, how, and from whom he got the whisky. This burden would be successfully carried by the accused if, in corroboration of his own statement, he proved by an unimpeached witness that he had in fact bought the whisky from another person and paid him for it;" citing the cases of *Grant, Mack,* and *Gaskins,* supra.

It will be observed, from the ruling in *Highsmith* v. *Waycross,* supra, *Gaskins* v. *State,* supra, and *Mack* v. *State,* supra, as well as numerous other decisions of this court and of the Supreme Court, that while, of course, one accused of selling liquor, or storing liquor for the purpose of illegal sale, enters upon his trial completely clothed with the presumption of innocence, this presumption, nevertheless, is overcome whenever the evidence discloses that he received money from another person, accompanied with a request to procure whisky for the latter, and shortly thereafter delivered whisky to that person; and the onus is then upon him to explain where, how, and from whom he got the liquor, and if the explanation offered by him is supported only by his own statement, the jury may convict. In other words, our courts have distinctly declared what amount of evidence will deprive the accused of the legal presumption of innocence in such cases and place upon him the burden of explaining his connection with the whisky he is charged with selling or storing, and have distinctly declared in addition that this burden is not successfully carried where his statement is uncorroborated by unimpeached testimony of some other person. Where his explanation is not supported by corroborating testimony, the jury, or the mayor or recorder of a municipality, exercising the functions of a jury, may decline to accept his statement as the truth of the case, and find the accused guilty; and in such event the conviction may be sustained, notwithstanding his unsupported exculpatory statement. It is true, circumstances might sometimes afford the necessary corroboration of the explanation made by the accused, but whether the circumstances do or do not sufficiently corroborate the explanation is a question for the jury, or the mayor, or other judicial officer sitting as a jury; and, of course, should he

disbelieve the statement of the accused altogether, proof of circumstances which tended merely to corroborate that statement would not itself demand an acquittal. If the statement of the accused had been accepted as true by the mayor, or if his statement taken in connection with all the surrounding circumstances had brought the mayor to the conclusion that the defendant was simply acting as agent for the buyer, and that the explanation offered by him was not a mere subterfuge to cover an illegal sale by himself, a different result must have been reached, but we can not set aside a judgment or verdict because a court or jury declines to accept as true the statement made by the accused on his trial; and since there was evidence which was satisfactory to the mind of the mayor, and his judgment has been approved by the judge of the superior court, under the repeated rulings of this court the judgment must be allowed to stand.                              *Judgment affirmed.*

RUSSELL, C. J., dissenting. In my opinion the corroboration of the defendant's statement, furnished by the circumstances as to the manner in which the whisky was obtained, if the presumption of innocence be regarded, brings it under the ruling of this court in *Bray* v. *Commerce,* supra.